UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

| | | |
|---|---|---|
| O BEE CREDIT UNION, | ) | Case No. 21-5820 |
| | ) | |
| Plaintiff, | ) | PLAINTIFF O BEE CREDIT |
| | ) | UNION'S COMPLAINT |
| v. | ) | |
| | ) | |
| SOUTHWEST MARINE AND GENERAL INSURANCE COMPANY, and STEWART TITLE GUARANTY COMPANY, | ) ) ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

Plaintiff, O Bee Credit Union ("O Bee"), by and through its attorneys Michael E. Farnell and Parsons Farnell & Grein, LLP, hereby alleges as follows:

**NATURE OF ACTION**

1.   This is a civil action for breach of contract, bad faith, violation of the Consumer Protection Act ("CPA"), and violation of the Insurance Fair Conduct Act ("IFCA"). The action arises out of a dispute between O Bee and Defendants regarding coverage under a fidelity bond and two title insurance policies issued by Defendants.

2.   O Bee suffered loss when a personal signature loan and two home equity line of credit ("HELOC") loans were fraudulently obtained by, among other things, forgery and the resulting loans were not repaid.

COMPLAINT (Case No. 21-5820)
PAGE 1

0009b kts Complaint.doc

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW MORRISON STREET
PORTLAND, OR 97205
(503) 222-1812
Facsimile (503) 274-7979

3. O Bee thereafter sought recovery of its loss under a fidelity bond and two title insurance policies.

4. Defendants denied coverage for O Bee's loss resulting from the HELOC loans.

5. Defendant Southwest Marine and General Insurance Company agreed to pay for O Bee's loss resulting from the personal signature loan under a complete reservation of rights.

6. To fully recover under the policies, O Bee was required to file suit.

## PARTIES

7. Plaintiff O Bee Credit Union is a Washington Credit Union with its principal place of business located in Thurston County.

8. Upon information and belief, Defendant Southwest Marine and General Insurance Company ("Southwest Marine") is an Arizona corporation with headquarters located in Morristown, New Jersey.

9. Upon information and belief, Defendant Stewart Title Guaranty Company ("Stewart Title") is a Texas corporation with headquarters located in Houston, Texas.

## JURISDICTION AND VENUE

10. This Court has jurisdiction under 28 U.S.C. § 1332 because there is a complete diversity of citizenship and the amount at stake exceeds $75,000.

11. Venue is proper in this Court under 28 U.S.C. § 1391 because the insured risk is in Pierce County and the loss occurred in Thurston County.

## ALLEGATIONS

12. O Bee is a Washington Credit Union with seven locations servicing more than 30,000 members.

13. O Bee provides numerous financial services and products to its members, including savings accounts, checking accounts, credit cards, mortgages, home equity loans, personal loans, auto loans, and student loans.

COMPLAINT (Case No. 21-5820)
PAGE 2

0009b kts Complaint.doc

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW MORRISON STREET
PORTLAND, OR 97205
(503) 222-1812
Facsimile (503) 274-7979

14. On December 23, 2020, O Bee discovered that certain loans that it had issued were fraudulently obtained by forgery, resulting directly in loss to O Bee.

15. On June 18, 2019, a checking account was opened in the name of Khai Nguyen Thai.

16. A deposit into the checking account was funded with a personal signature loan issued in the same name for $25,000.00.

17. On August 6, 2019, a home equity line of credit ("HELOC") in the amount of $245,000.00 was issued in the name of Mr. Thai and his wife Ninh Pham. This HELOC was secured by a deed of trust in the same amount on property owned by Mr. Thai and Ms. Pham.

18. On October 7, 2019, an additional HELOC was opened in the amount of $150,000.00, also in the names of Mr. Thai and Ms.Pham as borrowers. This HELOC was also secured by a deed of trust on property owned by Mr. Thai and Ms. Pham.

19. The loans were issued, and the checking account opened, pursuant to O Bee's policies and procedures for identification and income verification.

20. After the loans were funded, scheduled payments were made and the checking account was used in a manner consistent with credit union membership.

21. During the COVID-19 pandemic, the purported 'member' called O Bee to request payment relief, which O Bee granted.

22. Subsequently, the purported 'member' called O Bee requesting a second round of payment relief.

23. Because the income source represented to O Bee at the time of loan application was the operation of nail salons, which were allowed to operate in Washington during the COVID-19 pandemic, O Bee requested proof of business activity.

24. The purported 'member' did not comply with the request and did not return calls.

25. Accordingly, O Bee issued a collection notice, which was sent to the actual property address instead of the mailing address on file.

COMPLAINT (Case No. 21-5820)
PAGE 3

0009b kts Complaint.doc

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW MORRISON STREET
PORTLAND, OR 97205
(503) 222-1812
Facsimile (503) 274-7979

26. After receiving the collection notice, Mr. Thai contacted O Bee to inquire about the delinquencies.

27. Mr. Thai informed O Bee that he had never opened any accounts with or requested any loans from O Bee.

28. O Bee investigated the matter and determined that Toan Ngoc Ho had impersonated Mr. Thai. Mr. Ho had presented an authentic-appearing Washington State Driver's License with a valid number and full personal and business income and tax documentation in support of the loans and checking account, all in the name of Mr. Thai.

29. O Bee's investigation found no staff errors.

30. After discovering the fraud, Mr. Thai filed a police report with the Tacoma Police Department, report No. 2035401529.

31. On December 23, 2020, O Bee contacted Mr. Thai to confirm his identity and to inquire whether Mr. Thai knew Mr. Ho. Mr. Thai explained that he had purchased a vehicle from Mr. Ho and they had become friends until Mr. Thai realized that Mr. Ho was stealing from his home.

32. Based on O Bee's investigation:

   a. Mr. Ho signed Mr. Thai's signature on each loan application.

   b. Mr. Thai did not authorize Mr. Ho to affix his signature to any loan application.

   c. Mr. Thai did not ratify his signature on any loan application.

   d. Mr. Thai did not authorize or ratify the conveyance of property to secure the loans.

   e. Mr. Thai did not authorize or ratify the issuance of the loans.

   f. Mr. Ho affixed Mr. Thai's signature for each loan with the intent to deceive O Bee into issuing the loans in Mr. Thai's name.

COMPLAINT (Case No. 21-5820)
PAGE 4

0009b kts Complaint.doc

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW MORRISON STREET
PORTLAND, OR 97205
(503) 222-1812
Facsimile (503) 274-7979

33. On January 8, 2021, counsel for Mr. Thai and Mrs. Pham demanded that O Bee confirm and acknowledge the forgery. Their counsel also demanded that O Bee acknowledge that Mr. Thai and Mrs. Pham have no liability for the debt and release the deeds of trust encumbering their property.

**I. O Bee Purchased a Fidelity Bond Covering Losses Resulting from Forgery.**

34. To protect itself against risk of loss, O Bee purchases multiple forms of insurance.

35. O Bee purchased a fidelity bond numbered CR202000001080 from Southwest Marine for the policy period August 26, 2020 to August 26, 2023 (the "Bond").

36. O Bee paid substantial premiums to Southwest Marine for the protection afforded by the Bond.

37. Coverage under the Bond "applies to loss discovered by you while this Bond is in effect."

38. The Bond contains numerous insuring agreements, including Insuring Agreement D. Forgery or Alteration, which provides that Southwest Marine "will pay you for your loss resulting directly from the **forgery** or alteration of an **instrument**."

39. Terms appearing in bold in the Bond are specifically defined in the Bond. Those terms are also bolded in this Complaint.

40. The Bond defines **forgery** in relevant part as "affixing the handwritten signature, or a reproduction of the handwritten signature, of another natural person without authorization or ratification, and with the intent to deceive."

41. The Bond defines **instrument** in relevant part as "an original: mortgage, **document of title**, deed, contract for deed, deed of trust, promissory note, **security agreement**, money order, certificate of deposit, **certificated securities**, bond coupon, interim receipt for a security, assignment of mortgage, check, draft, share draft, bill of exchange, **withdrawal order**, **letter of credit**, **acceptance**, passbook held as collateral, or **certificate or origin or title**."

COMPLAINT (Case No. 21-5820)
PAGE 5

0009b kts Complaint.doc

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW MORRISON STREET
PORTLAND, OR 97205
(503) 222-1812
Facsimile (503) 274-7979

42. The Bond defines a **security agreement** as "a written agreement that creates an interest in personal property or fixtures and secures payment or performance of an obligation."

43. Coverage under Insuring Agreement D. Forgery or Alteration is subject to a $500,000 Single Loss Limit of Liability and a $5,000 Single Loss Deductible.

44. The Bond provides that the Single Loss Limit of Liability and Single Loss Deductible apply to each **single loss**.

45. **Single loss** is defined as:

[A]ll loss covered under this Bond resulting from:

1. Any one act or omission, or series of related acts and/or omissions, on the part of any person or persons (whether **employee(s)**, **director(s)**, or not), whenever occurring;

2. All acts and omissions, whether related or not, on the part of any person (whether an **employee**, **director**, or not), or in which such person is concerned or implicated, whenever occurring; or

3. Any one casualty or event not specified in a. or b. [*sic*] above.

46. The Bond contains exclusions, including Exclusion S., which provides that the Bond does not cover:

Any loss resulting directly or indirectly from the complete or partial nonpayment of or default on a **loan** or transaction in the nature of or amounting to a **loan**, whether such **loan** or transaction was obtained in good faith or through trick, artifice, fraud or false pretenses, *except as may be covered under*:

\* \* \* \*

3. Forgery or Alteration Insuring Agreement[.]  (Emphasis added.)

47. The Bond contains an Other Insurance provision, which provides that "[t]he coverage provided under this Bond will be excess over any other valid and collectible insurance, indemnity or bond coverage which applies or would have applied in the absence of this Bond."

**II.   O Bee Purchased Title Insurance Covering Defects Caused by Forgery and Fraud.**

48. Upon the issuance of each HELOC loan, O Bee procured title insurance from Stewart Title.

COMPLAINT (Case No. 21-5820)
PAGE 6

0009b kts Complaint.doc

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW MORRISON STREET
PORTLAND, OR  97205
(503) 222-1812
Facsimile (503) 274-7979

49. The first title insurance policy is number M-0000-783759888, issued on August 6, 2019, in the amount of $245,000.00 (the "August 2019 Title Policy").

50. The second title insurance policy is number M-0000-956351068, issued on October 9, 2019, in the amount of $150,000.00 (the "October 2019 Title Policy" and with the August 2019 Title Policy the "Title Policies").

51. O Bee paid substantial premiums to Stewart Title for the protection afforded by the Title Policies.

52. The Title Policies were issued on the same ALTA Loan Policy 06-17-06 form.

53. The Title Policies provide that "SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, STEWART TITLE GUARANTY COMPANY . . . insures as of Date of Policy . . . against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of" fourteen specific covered risks.

54. Covered Risk 2 provides coverage for "[a]ny defect in or lien or encumbrance on the Title.  This Covered Risk includes but is not limited to insurance against loss from (a) A defect in the Title caused by (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation; [and] (ii) failure of any person or Entity to have authorized a transfer or conveyance[.]"

**III.  O Bee Suffered Loss Resulting Directly from Forgery of Instruments, Triggering Coverage Under the Bond.**

55. Mr. Ho's act of affixing Mr. Thai's signature documents for each loan constitutes a **forgery** under the Bond, or "affixing the handwritten signature, or a reproduction of the handwritten signature, of another natural person without authorization or ratification, and with the intent to deceive."

///

COMPLAINT (Case No. 21-5820)
PAGE 7

0009b kts Complaint.doc

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW MORRISON STREET
PORTLAND, OR 97205
(503) 222-1812
Facsimile (503) 274-7979

56. For the personal loan, Mr. Ho affixed Mr. Thai's signature on a Closed-End Note, Disclosure, Loan and Security Agreement that, among other things, gave O Bee "a security interest in your shares and deposits in the credit union."

57. The Closed-End Note, Disclosure, Loan and Security Agreement qualifies as an **instrument** under the Bond because it is a promissory note.

58. The Closed-End Note, Disclosure, Loan and Security Agreement also independently qualifies as an **instrument** under the Bond because it is a **security agreement**, or "a written agreement that creates an interest in personal property or fixtures and secures payment or performance of an obligation."

59. For the HELOCs, Mr. Ho affixed Mr. Thai's signature on two Home Equity Credit Line Agreements and two corresponding deeds of trust, each of which constitutes an **instrument**.

60. Accordingly, O Bee suffered "loss resulting directly from the **forgery** or alteration of an **instrument**."

61. All loss alleged by O Bee is the result of a **single loss** because it results from acts or omissions on the part of Mr. Ho, or acts or omissions in which Mr. Ho is concerned or implicated.

**IV. O Bee Suffered Loss from Defects in the Titles Caused by Forgery and Fraud, Triggering Coverage Under the Title Policies.**

62. The Title Policies do not define the terms "forgery," "fraud," or "impersonation."

63. Mr. Ho's use of Mr. Thai's identity to open the HELOC loans constitutes forgery, fraud, and/or impersonation for purposes of the Title Policies, which created defects in the titles covered by the Title Policies.

64. Coverage is also triggered for a "failure of any person or Entity to have authorized a transfer or conveyance."

COMPLAINT (Case No. 21-5820)
PAGE 8

0009b kts Complaint.doc

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW MORRISON STREET
PORTLAND, OR 97205
(503) 222-1812
Facsimile (503) 274-7979

65. O Bee sustained or incurred loss from the defects in the titles no later than when it discovered that the HELOC loans had been fraudulently obtained by Mr. Ho.

**V.   Southwest Marine and Stewart Title Rejected O Bee's Requests for Coverage.**

66. O Bee timely requested coverage for its loan loss from Southwest Marine, after which Southwest Marine conducted a claims investigation.

67. Southwest Marine requested, and O Bee provided, what amounted to over 1,400 pages of documents.

68. Southwest Marine also interviewed O Bee's employees by both email and telephone.

69. On April 9, 2021, Southwest Marine denied coverage for O Bee's loss on the purported basis that it was excluded by Exclusion S. Specifically, Southwest Marine asserted:

> In order to avail himself to the services provided by Credit Union, Ho was required to execute a membership application and agreement. Membership is required before any transactions, including loans, can be processed for the applicant. The membership application is not a covered **instrument** as defined above. Ho's membership in Credit Union was fraudulent. All subsequent transactions processed for Ho were a continuation of this fraud. The theft of Thai's information initiated the subsequent loan fraud against the Credit Union. Identity theft is not an exception to Exclusion S. Consequently, we must respectfully decline coverage for this loan loss.

70. In other words, because the forgerer committed other acts of fraud, Southwest Marine concluded that the undisputed acts of **forgery** were not covered under the Bond.

71. On April 21, 2021, O Bee disputed Defendant's denial. O Bee observed that Southwest Marine did "not dispute that Ho forged Thai's signature on loan documents or that the loan documents are instruments." O Bee further observed that:

> [t]he definition of **forgery** is not contingent on Ho forging Thai's signature exclusively on loan documents or as a stand-alone act. Accordingly, Ho's 'membership' with [O Bee] is irrelevant, as is the fact that Ho stole Thai's identity. Neither changes the fact that Ho forged Thai's signature on loan documents, resulting in [O Bee's] loss. Indeed, one would expect that forgeries regularly accompany stolen identities and follow in the wake of other acts of fraud.

COMPLAINT (Case No. 21-5820)
PAGE 9

0009b kts Complaint.doc

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW MORRISON STREET
PORTLAND, OR 97205
(503) 222-1812
Facsimile (503) 274-7979

…

72. In the same April 21, 2021 response, O Bee informed Southwest Marine that failure to pay benefits due under the Bond would expose Southwest Marine to damages under IFCA.

73. Southwest Marine responded on May 14, 2021, asserting various alternative coverage positions, asserting that its policy is excess coverage above the Title Policies issued by Stewart Title, and requesting additional information from O Bee.

74. At Southwest Marine's behest, O Bee subsequently requested coverage under the Title Policies.

75. On May 26, 2021, O Bee reserved its rights on Southwest Marine's coverage positions and provided additional information responsive to Southwest Marine's new requests.

76. O Bee observed that certain requests for additional information—including information concerning the Title Policies—had no bearing on O Bee's loss arising from the personal loan. O Bee therefore requested "that Southwest Marine proceed with indemnifying [O Bee] for its loss from the personal loan."

77. On June 18, 2021, Stewart Title denied O Bee's requests for coverage under the Title Policies. Stewart Title asserted: (1) reconveyance of the deeds of trust ended coverage under the Title Policies; (2) O Bee "created, suffered, assumed, or agreed to" the loss by issuing the loans and/or reconveying the deeds of trust; and (3) O Bee prejudiced Stewart Title in violation of one or more policy conditions by reconveying the deeds of trust before notifying Stewart Title.

78. On June 25, 2021, O Bee advised Southwest Marine that Stewart Title had denied coverage under the Title Policies.

79. Also on June 25, 2021, and acting in good faith with respect to Southwest Marine's instruction that coverage must first be sought from Stewart Title, O Bee disputed Stewart Title's denial under the Title Policies. O Bee asserted that: (1) O Bee's loss was incurred before the reconveyance of the deeds of trust and was therefore covered; (2) O Bee did

COMPLAINT (Case No. 21-5820)
PAGE 10

0009b kts Complaint.doc

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW MORRISON STREET
PORTLAND, OR 97205
(503) 222-1812
Facsimile (503) 274-7979

not "create" the loss by issuing the loans or "assume" the loss by reconveying the deeds of trust; and (3) Stewart Title cannot be prejudiced by reconveyance where the loans were fraudulently obtained.

80. On July 20, 2021, Southwest Marine requested still more information from O Bee based on assertions made by Stewart Title in its denial, including information concerning the execution of the loan documents outside of the presence of O Bee with a notary public, the relationship between Mr. Ho and Mr. Thai, and O Bee's claims against Stewart Title.

81. On July 28, 2021, Stewart Title again denied coverage under the Title Policies for substantially similar reasons as its first denial: (1) coverage ended upon reconveyance of the deeds of trust; (2) Stewart Title suffered prejudice from the reconveyance; and (3) O Bee created or assumed the loss.

82. On August 9, 2021, O Bee responded to Southwest Marine by providing the requested information or explaining why it was not relevant. O Bee advised that Stewart Title had adhered to its denial. O Bee informed Southwest Marine that it was welcome to contact counsel for Mr. Thai and Mrs. Pham to request an additional statement or take a deposition but that O Bee would not be responsible for those costs. O Bee demanded payment of its loss within twenty days or it would issue the requisite IFCA notice.

83. Upon learning that Southwest Marine's counsel was out of the office the week that O Bee's demand expired, O Bee extended its demand deadline to September 9, 2021.

84. Southwest Marine failed to respond within the extended deadline and O Bee therefore issued its IFCA notice on September 23, 2021.

85. The very next day, on September 24, 2021, Southwest Marine responded to O Bee's August 9, 2021 letter and demand. Southwest Marine once again denied the claim.

86. On October 13, 2021, O Bee was copied on a letter from Southwest Marine to Stewart Title requesting (1) additional information that Stewart Title referenced in its denial

COMPLAINT (Case No. 21-5820)
PAGE 11

0009b kts Complaint.doc

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW MORRISON STREET
PORTLAND, OR 97205
(503) 222-1812
Facsimile (503) 274-7979

letters, and (2) agreement to enter into three-party discussions with Southwest Marine and O Bee. Southwest Marine requested a response within twenty days.

87. On November 1, 2021, Southwest Marine advised O Bee that Stewart Title refused to provide any additional information to Southwest Marine or enter into three-party negotiations with Southwest Marine and O Bee.

88. In the same November 1, 2021 letter, "Southwest Marine determined that, at this time, the Credit Union has failed to establish that it has incurred a loss potentially covered under Insuring Agreement D. However, subject to a full reservation of all of Southwest Marine's rights under the Bond," Southwest Marine agreed to pay O Bee for the amount of loss that would have been covered under the Bond for the personal signature loan, or $13,413.68.

89. Southwest Marine advised O Bee that coverage for the HELOC loans should be obtained from Stewart Title.

90. O Bee is caught between two insurers, each of which attempts to redirect O Bee to the other. O Bee has reluctantly concluded that the only way it can receive the insurance protection for which it has paid is to file this lawsuit.

## FIRST CAUSE OF ACTION

Breach of Contract

(*Against Defendant Southwest Marine*)

91. O Bee restates and incorporates the allegations above.

92. Southwest Marine accepted premiums from O Bee and issued the Bond.

93. The Bond is a valid and enforceable contract with consideration.

94. O Bee's loss is covered under Insuring Agreement D. Forgery or Alteration.

95. All conditions precedent to O Bee's right to recover under the Bond have been or will be satisfied or excused. To the extent any such conditions precedent have not been satisfied or excused, Southwest Marine waived such conditions precedent or has suffered no prejudice.

COMPLAINT (Case No. 21-5820)
PAGE 12

0009b kts Complaint.doc

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW MORRISON STREET
PORTLAND, OR 97205
(503) 222-1812
Facsimile (503) 274-7979

96. Southwest Marine's breach has deprived O Bee of the benefits of the insurance protection to which it is entitled and for which substantial premiums were paid.

97. As a result of Southwest Marine's breach, O Bee has sustained actual money damages of $391,814.61.

98. As a result of Southwest Marine's breach, O Bee is entitled to recover its attorney fees incurred in the prosecution of this matter. *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 54, 811 P.2d 673, 682 (1991).

## SECOND CAUSE OF ACTION

Bad Faith

(*Against Defendant Southwest Marine*)

99. O Bee restates and incorporates the allegations above.

100. All of the foregoing breaches alleged, and all of the allegations below, involve conduct engaged in knowingly, intentionally, or unreasonably by Southwest Marine. Southwest Marine failed to comply with its good faith and other legal duties owed to O Bee.

101. Under the Bond and Washington law, Southwest Marine must act in good faith in investigating and handling O Bee's claims for loss resulting directly from the **forgery** of **instruments** as described above.

102. Southwest Marine's breach of the duty to indemnify O Bee for its loss violated its good faith and legal duties under the Bond because that breach was unreasonable, frivolous, and unfounded.

103. By refusing to indemnify O Bee for its loss because "[i]dentity theft is not an exception to Exclusion S." when O Bee had suffered loss resulting directly from the **forgery** of **instruments**—which *is* an exception to Exclusion S.—Southwest Marine unreasonably denied O Bee its benefits due under the Bond.

///

COMPLAINT (Case No. 21-5820)
PAGE 13

0009b kts Complaint.doc

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW MORRISON STREET
PORTLAND, OR 97205
(503) 222-1812
Facsimile (503) 274-7979

104. By refusing to indemnify O Bee for its loss based on the Bond's other insurance provision even after learning that Stewart Title had denied coverage *twice* under its Title Policies, Southwest Marine unreasonably denied O Bee its benefits due under the Bond.

105. Southwest Marine further violated its good faith and legal duties to O Bee by engaging in conduct that violates the requirements imposed by the Washington Administrative Code ("WAC"). These violations include, but are not limited to:

    a. Misrepresenting pertinent facts or insurance policy provisions, in violation of WAC 284-30-330(1). Southwest Marine asserted that identity theft was not an exception to Exclusion S., instead of faithfully analyzing coverage under Insuring Agreement D. Forgery or Alteration, which is an express exception.

    b. Failing to acknowledge and act reasonably promptly upon O Bee's communications regarding the claim, in violation of WAC 284-30-330(2). After challenging Southwest Marine's first denial on April 21, 2021, and responding to two sets of requests for additional information, O Bee demanded payment of its loss by, as extended, September 9, 2021. O Bee did not receive a response until September 24, 2021, after it issued its IFCA notice on September 23, 2021.

    c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies, in violation of WAC 284-30-330(3). Southwest Marine's numerous requests for information after its April 9, 2021 denial reveal that Southwest Marine denied O Bee's claim before completing a full investigation of O Bee's loss, meaning Southwest Marine failed to promptly investigate O Bee's loss.

    d. Refusing to pay this claim without conducting a reasonable investigation, in violation of WAC 284-30-330(4). Southwest Marine's prolonged claims investigation after its April 9, 2021 denial reveals that Southwest Marine denied O Bee's claim before completing a full investigation of O Bee's loss.

COMPLAINT (Case No. 21-5820)
PAGE 14

0009b kts Complaint.doc

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW MORRISON STREET
PORTLAND, OR 97205
(503) 222-1812
Facsimile (503) 274-7979

e. Not attempting in good faith to effectuate a prompt, fair and equitable settlement of O Bee's claim, in violation of WAC 284-30-330(6). Much of Southwest Marine's investigation focused on information that is only relevant to the HELOC loans, which does not apply to O Bee's loss resulting directly from the **forgery** of the personal loan documents. Although Southwest Marine eventually paid O Bee for its personal loan loss, that payment was made without an admission of coverage and months after O Bee first requested coverage.

f. Failing to promptly provide reasonable explanations of the basis in the policies in relation to the facts or applicable law for the denials of this claim, in violation of WAC 284-30-330(13). Southwest Marine's basis for denial under Exclusion S was not a reasonable explanation for a denial of coverage.

g. Failing to make appropriate replies to pertinent communications from OBCU within ten working days, in violation of WAC 284-30-360(3). Forty-six days elapsed between O Bee OBCU demanding payment on August 9, 2021 and Southwest Marine responding on September 24, 2021, and Southwest Marine only responded *after* O Bee had issued its IFCA notice on September 23, 2021. Moreover, Southwest Marine did not respond to O Bee's April 21, 2021 rebuttal of Southwest Marine's denial until May 14, 2021, or twenty-three days later.

h. Failing to complete its investigation of this claim within thirty days after notification of the claim, in violation of WAC 284-30-370. O Bee first provided notice of its loss on December 24, 2020. As of September 24, 2021, Southwest Marine was still requesting additional information that it purportedly needed to adjust O Bee's loss.

i. Compelling O Bee to initiate litigation by denying coverage in violation of WAC 284-30-330(7).

COMPLAINT (Case No. 21-5820)
PAGE 15

0009b kts Complaint.doc

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW MORRISON STREET
PORTLAND, OR 97205
(503) 222-1812
Facsimile (503) 274-7979

      j.      Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for its denial of O Bee's claim in violation of WAC 284-30-330(13).  Southwest Marine's April 9, 2021 denial asserted that "[i]dentity theft is not an exception to Exclusion S." and that there was no coverage because all of Mr. Ho's acts followed in the wake of that identity theft and Mr. Ho's membership (in Mr. Thai's name) with O Bee.  This was not a reasonable explanation for denying coverage because neither of these assertions changed the fact that Mr. Ho still affixed Mr. Thai's signature to loan **instruments** without authorization or ratification.  Accordingly, neither of these assertions changed the fact that O Bee suffered loss resulting directly from the **forgery** of an **instrument**.

106.    Southwest Marine, its adjusting agents, other agents and employees have engaged in acts and/or omissions that constitute a breach of Southwest Marine's legal duties set forth above, as well as its duty of good faith to O Bee, which include its inaction and failure to properly and reasonably investigate, handle, adjust, and indemnify O Bee's loss in a prompt, reasonable and fair manner.

107.    As a result of Southwest Marine's bad faith, O Bee suffered substantial damages, including but in no way limited to:  being deprived of the insurance benefits due under the Bond; loss of time and use of money in O Bee's business; incurring attorney fees, costs, and expenses in the prosecution of this matter; and for such other damages and in amounts to be proven at trial.  Because O Bee has still not been indemnified for its loss, O Bee will continue to suffer these substantial damages.

108.    As a result of the above conduct, O Bee is entitled to recover its attorney fees incurred in the prosecution of this case.  *Olympic S. S. Co.*, 117 Wn.2d at 54.

///

COMPLAINT (Case No. 21-5820)
PAGE 16

0009b kts Complaint.doc

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW MORRISON STREET
PORTLAND, OR  97205
(503) 222-1812
Facsimile (503) 274-7979

**THIRD CAUSE OF ACTION**

Violation of Insurance Fair Conduct Act

(*Against Defendant Southwest Marine*)

109.　O Bee restates and incorporates the allegations above.

110.　O Bee has asserted a right to coverage and payment of policy benefits for its loss resulting directly from the **forgery** of **instruments**, which is due and owing under the Bond.

111.　Southwest Marine has denied coverage for O Bee's loss and has refused to pay the benefits owed under the Bond, as set forth above.  Southwest Marine's investigation *after* denying O Bee's claim was prolonged for the purpose of delay.

112.　Southwest Marine's denial of coverage was and is unreasonable, and constitutes a violation of RCW 48.30.010 *et seq.*

113.　Southwest Marine's breaches of the WAC as set forth above were and are unreasonable, and constitute a violation of RCW 48.30.010 *et seq.*

114.　O Bee has suffered actual damages resulting from Southwest Marine's unreasonable denial of coverage and payment of benefits, including but not limited to the insurance proceeds and benefits due under the Bond; O Bee's attorney fees and costs, expenses, and interests; and for such other damages and in amounts to be proven at trial.  Because O Bee has still not been indemnified for its loss, it will continue to suffer these substantial damages.

115.　O Bee provided written notice of the basis for its cause of action under RCW 48.30.010 *et seq.* to Southwest Marine and the Washington Office of the Insurance Commissioner more than twenty days before filing this action, but Southwest Marine failed to resolve the basis for the action within twenty days of that notice.

116.　Pursuant to RCW 48.30.015, O Bee is entitled to actual damages and treble damages, and to recover their attorney fees and costs incurred in bringing this suit in amounts to be proven at trial.

COMPLAINT (Case No. 21-5820)
PAGE 17

0009b kts Complaint.doc

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW MORRISON STREET
PORTLAND, OR 97205
(503) 222-1812
Facsimile (503) 274-7979

## FOURTH CAUSE OF ACTION

Violation of Consumer Protection Act

(*Against Defendant Southwest Marine*)

117. O Bee restates and incorporates the allegations above.

118. Southwest Marine, through the conduct set forth above, violated RCW 19.86.010 *et seq.* ("the CPA"). Because that conduct violated the WAC and RCW 48.30.010, as described above, Southwest Marine's conduct is a *per se* violation of the CPA.

119. Southwest Marine, through the conduct set forth above, has acted unfairly and deceptively in violation of the CPA.

120. Southwest Marine's conduct occurred in trade and commerce.

121. As an insurer issuing policies in Washington, Southwest Marine's unfair and deceptive practices impact the public interest.

122. Southwest Marine's unfair and deceptive practices caused O Bee substantial damage to business and property, including but not limited to all of the damages set forth above, loss of time, and interference with business. Because O Bee has still not been indemnified for its loss, O Bee will continue to suffer these substantial damages.

123. Pursuant to RCW 19.86.090, O Bee is entitled to actual damages, treble damages, injunctive relief, and to recover their attorney fees and costs incurred in bringing this suit in amounts to be proven at trial.

## FIFTH CAUSE OF ACTION

Breach of Contract

(*Against Defendant Stewart Title*)

124. O Bee restates and incorporates the allegations above.

125. Stewart Title accepted premiums from O Bee and issued the Title Policies.

126. The Title Policies are valid and enforceable contracts with consideration.

127. O Bee's loss is covered under Covered Risk 2.

COMPLAINT (Case No. 21-5820)
PAGE 18

0009b kts Complaint.doc

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW MORRISON STREET
PORTLAND, OR 97205
(503) 222-1812
Facsimile (503) 274-7979

128. All conditions precedent to O Bee's right to recover under the Title Policies have been or will be satisfied or excused. To the extent any such conditions precedent have not been satisfied or excused, Stewart Title waived such conditions precedent or has suffered no prejudice.

129. Stewart Title's breach has deprived O Bee of the benefits of the insurance protection to which it is entitled and for which substantial premiums were paid.

130. As a result of Stewart Title's breach, O Bee has sustained actual money damages of $395,000.00.

131. As a result of Stewart Title's breach, O Bee is entitled to recover its attorney fees incurred in the prosecution of this matter. *Olympic S.S. Co.*, 117 Wn.2d 37 at 54.

## JURY DEMAND

132. O Bee hereby demands a jury trial on all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, O Bee demands and prays for a judgment in its favor and against Defendants as follows:

   A. damages of $391,814.61 on O Bee's First Cause of Action;

   B. damages in an amount to be determined at trial on O Bee's Second Cause of Action;

   C. damages of $391,814.61 on O Bee's Third Cause of Action plus treble damages pursuant to the Insurance Fair Conduct Act;

   D. damages of $391,814.61 on O Bee's Fourth Cause of Action plus treble damages pursuant to the Consumer Protection Act;

   E. damages of $395,000 on O Bee's Fifth Cause of Action;

   F. attorney fees, court costs and litigation costs on all of O Bee's Causes of Action;

///

COMPLAINT (Case No. 21-5820)
PAGE 19

0009b kts Complaint.doc

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW MORRISON STREET
PORTLAND, OR 97205
(503) 222-1812
Facsimile (503) 274-7979

G. pre- and post-judgment interest on all of O Bee's Causes of Action; and

H. such other relief as this Court may deem just.

DATED this 9th day of November, 2021.

        **PARSONS FARNELL & GREIN, LLP**

By: *s/ Michael E. Farnell*
    **Michael E. Farnell, WA Bar #23735**
    E-Mail: mfarnell@pfglaw.com
    Telephone No.: (503) 222-1812
    Facsimile No.: (503) 274-7979
    Attorneys for Plaintiff, O Bee Credit Union

COMPLAINT (Case No. 21-5820)
PAGE 20

0009b kts Complaint.doc

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW MORRISON STREET
PORTLAND, OR 97205
(503) 222-1812
Facsimile (503) 274-7979